UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                    )
GARY M. BLOOM,                           )            Civil Action No. 1:24-cv-10339
        Plaintiff                                  )
            -v-                                      )
WILLIAM JAMES CAMPBELL III,     )            Jury Trial Demanded
        Defendant                             )
_____ )

### AMENDED COMPLAINT FOR A CIVIL CASE

Plaintiff Gary M. Bloom hereby commences this action against Defendant William James

Campbell III, seeking damages, equitable relief, and declarations of copyright ownership,

pleading fraud in the inducement, breach of contract, quantum meruit, and unjust enrichment,

under the statutory and common law of the Commonwealth of Massachusetts.  The causes of

action derive from Defendant's intentional misrepresentation of the literary work of others as his

own and other related misrepresentations.

### PARTIES

1)      Plaintiff Gary M. Bloom ("Bloom") is an individual with an address at 30

Franklin Street, Unit 223, Malden, Middlesex County, Massachusetts 02148.

2)      Defendant William James Campbell III ("Defendant") is an individual with a last

known address at 990 East Main St, unit b112, Clarion, Clarion County, PA 16214; but

Defendant vacated that address in November of 2023, and Defendant refuses to provide his

current address.

## JURISDICTION

3)     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 for diversity jurisdiction, where Bloom is a citizen of the Commonwealth of Massachusetts, Defendant is a citizen of the Commonwealth of Pennsylvania, and the amount in controversy is at least $271,950.00, not counting interest and costs.

4)     Additionally, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1338(a) which gives federal courts exclusive jurisdiction over copyright actions.

5)     Further, this Court has supplemental jurisdiction over the state and common law claims pursuant to 28 U.S.C. § 1367, because the state and common law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

6)     This Court has personal jurisdiction over the Defendant pursuant to Defendant's express consent, by contract, to jurisdiction being proper in the Commonwealth of Massachusetts.

7)     This Court has specific jurisdiction over the Defendant because there is a specific connection between the claims and the Defendant's activities within the Commonwealth of Massachusetts.

8)     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

9)     On or about February 28, 2023, Pennsylvania-based Defendant reached out to Massachusetts-based Bloom for legal assistance on an unrelated matter.

10)     Bloom declined to represent Defendant on that matter.

11)     Defendant learned that Bloom was an actor.

12)    Defendant represented himself as a professional screenwriter and creative.

13)    Defendant was eager to work with an entertainment attorney.

14)    Defendant was working on multiple creative projects: the "See You Later, Escalator (short)" screenplay (the "ESCALATOR Short"), the "See You Later, Escalator (feature)" screenplay (the "ESCALATOR Feature"), the "Serene" screenplay ("SERENE"), the "The Last Door" screenplay ("LAST DOOR"), the "The Money Tree" screenplay ("MONEY TREE"), the "Open House" script ("OPEN HOUSE"), the "The Obstacle" screenplay ("OBSTACLE"), the "Wilbur the Whompin' Wallaby" animated video project ("WILBUR"), and the "Cat-Astrophe" animatics video project. (Hereinafter, the "PROJECTS").

15)    Defendant was co-writing with Keshia C. Willi on SERENE and LAST DOOR.

16)    Defendant was in communications with an investment broker (the "Investor") regarding funding for MONEY TREE.

17)    Defendant was working with an animator (the "Animator") who was helping with a "pitch deck" (i.e. – investor marketing materials) for MONEY TREE.

18)    Defendant was signed as a client by a voice talent agent (the "Promoter") who was also helping to cast and promote some of the PROJECTS.

19)    Defendant had been working with a director/producer (the "Director") to film the ESCALATOR Feature, but the project had been stagnant for some months.

20)    Defendant sought Bloom's services to help monetize the PROJECTS by negotiating and closing production deals.

21)    Defendant was experiencing a legal issue on OBSTACLE and needed legal help.

22)    Defendant offered to cast Bloom as an actor in his projects as they got produced.

23)     Defendant claimed to be the sole writer of ESCALATOR Short, ESCALATOR Feature, and OBSTACLE.

24)     Defendant claimed to be one of only two equally-contributing co-writers of SERENE, LAST DOOR, OPEN HOUSE, and MONEY TREE.

25)     Defendant claimed to be the sole creative behind WILBUR.

26)     Defendant claimed to be well connected in the entertainment industry and willing to introduce Bloom to people who could further his acting career.

27)     On or about March 13, 2023, Bloom read ESCALATOR Short and SERENE, reviewed the WILBUR pitch deck and concept video, and deemed them all marketable.

28)     Although the names of Michael Das and Rusty Gilligan were on the title page of ESCALATOR Short, Defendant assured Bloom that the title page was incorrect, that he was the sole writer, and that the two named individuals made no contribution to the script.

29)     On or about March 16, 2023, Defendant created an ESCALATOR CAST group Facebook chat with multiple actors across the country, and then added Bloom a few days later.

30)     Bloom and Defendant agreed to enter into an initial simple legal services agreement so that Bloom could provide legal services to Defendant for the OBSTACLE issue while Bloom researched fair terms for a compensation contract for monetizing the PROJECTS.

31)     Bloom and Defendant agreed that Defendant would email images of signed documents to Bloom for his records and follow up with mailed signed paper copies.

32)     On or about April 2, 2023, Bloom and Defendant signed an initial simple legal fee agreement (the "Fee Agreement").

33)     Defendant emailed a signed document image but never mailed a paper copy.

34) On or about April 4, 2023, Defendant received and signed a letter of informed consent related to Bloom's status as an actor.

35) Defendant emailed a signed document image but never mailed a paper copy.

36) Bloom read LAST DOOR and MONEY TREE and deemed them marketable.

37) Bloom was prepared to clear Defendant's PROJECTS for copyright registration and production.

38) On or about April 9, 2023, Bloom proofed LAST DOOR and sent 10 fixes and some suggestions to Defendant and Willi.

39) On or about April 29, 2023, Bloom organized and lead a first table read of ESCALATOR Short in an effort to revive the ESCALATOR Feature project.

40) On or about April 30, 2023, Defendant shared with Bloom a NATPE list containing potential investors and/or producers for WILBUR and "Cat-Astrophe."

41) On or about May 4, 2023, Defendant had a creative disagreement with Bloom and Willi on LAST DOOR, and Defendant became combative when Bloom and Willi would not rewrite the script according to his view.

42) Bloom told Defendant to do the rewrite himself, or at least document the changes that would be required for that script change to LAST DOOR, but Defendant never did so.

43) On or about May 15, 2023, Defendant requested that Bloom become a co-writer on ESCALATOR Short, ESCALATOR Feature, SERENE, LAST DOOR, and OPEN HOUSE.

44) On or about May 16, 2023, Bloom spent 37.2 hours over four days developing a software program to send marketing emails for WILBUR and "Cat-Astrophe" to the NATPE list.

45) On or about May 21, 2023, Defendant and Willi had a falling out, and Defendant tried to take away Willi's writing credit on SERENE and LAST DOOR, which Bloom prevented.

46)     On or about May 28, 2023, Bloom proofread MONEY TREE and provided at least 50 corrections and suggestions to Defendant and the co-writer.

47)     On or about June 1, 2023, Defendant received from Bloom five writers' collaboration agreements, for ESCALATOR Short, ESCALATOR Feature, SERENE, LAST DOOR, and OPEN HOUSE (hereafter, the "Five Writers Agreements") but failed to sign them.

48)     On or about June 11, 2023, Bloom organized and lead a second table read of ESCALATOR Short.

49)     On or about June 14, 2023, Defendant received from Bloom a second letter of informed consent regarding co-writing but disapproved of some of the language.

50)     On or about June 20, 2023, Bloom asked Defendant to work through the OBSTACLE script and write a synopsis for a pitch deck.

51)     Defendant said multiple times that he would do it, but he failed to do so.

52)     On or about June 23, 2023, Defendant received from Bloom an amended second letter of informed consent regarding co-writing, along with the Five Writers Agreements.

53)     On or about June 29, 2023, Bloom finished drafting the legal services contingent contract by which he would receive deferred compensation when projects went into production (the "Contingent Contract").

54)     On or about June 29, 2023, on Defendant's request, Bloom resent the previous six documents, and Bloom sent the legal services Contingent Contract.

55)     On or about June 30, 2023, Defendant claimed to have mailed, via US post, 11 signed documents: the legal services Contingent Contract and simple Fee Agreement, the two letters of informed consent, the Five Writers Agreements, and two documents for the OBSTACLE issue (hereinafter, the "DOCUMENTS"); but no envelope ever arrived.

56)     Defendant had promised to email images of all signed DOCUMENTS before mailing them, but he failed to do so.

57)     On or about July 11, 2023, Bloom arranged for all the DOCUMENTS to be sent to Defendant via DocuSign.

58)     On or about July 11, 2023, Defendant signed all 11 of the DOCUMENTS via DocuSign, including the legal services Contingent Contract. *See Exhibit A.*

59)     Bloom explained that each project would have to be cleared for copyright registration before production

60)     In the Contingent Contract, Defendant warrants in par. 15 to being the only writer of ESCALATOR Short and ESCALATOR Feature (together, the "ESCALATOR Scripts").

61)     Defendant warrants in par. 15 to being the only writer of OBSTACLE.

62)     Defendant warrants in par. 15 to being one of only two writers of SERENE.

63)     Defendant warrants in par. 16 to indemnify and hold harmless Bloom for any costs or damages resulting from Defendant's failure to disclose in par. 15.

64)     Defendant failed to disclose, and later admitted to there being, two other co-writers on ESCALATOR Short: Rusty Gilligan and Michael Das.

65)     Defendant failed to disclose, and later admitted to there being, two other co-writers on ESCALATOR Feature: Christopher Rennie and Carrie Fishbane.

66)     Defendant failed to disclose, and later admitted to there being, at least two other co-writers on SERENE: Mya Lien and "Dawn DuVerger" (the stage name of Julianna McRae).

67)     On or about July 11, 2023, Bloom and Defendant also signed the Five Writers Agreements.

68)     In par. 17 of those writers' agreements, each party warrants (1) to not introduce any material into the work that would violate the rights or Copyright of any other person, and (2) to indemnify and hold the other harmless in case of such a breach.

69)     Due to Defendant's failure to disclose true authorship, Bloom worked at least 50 unexpected hours investigating the ESCALATOR Scripts and SERENE to clear them for pre-production copyright registration.

70)     While investigating the true authorship of ESCALATOR and SERENE, Bloom spoke with at least six undisclosed co-writers who had their work plagiarized by Defendant after a failed collaboration effort culminating with a terrible falling out with Defendant.

71)     On or about July 20, 2023, Defendant forwarded an old synopsis of OBSTACLE to Bloom in lieu of writing the one he promised to write.

72)     On or about July 22, 2023, Defendant became belligerent about the writers' agreement for ESCALATOR Short, because Bloom was listed as the "first writer," and Defendant denied ever agreeing to Bloom being listed as first writer instead of Defendant.

73)     On or about July 22, 2023, Defendant falsely accused Bloom, via text message, of forging his signature on the contracts.

74)     On or about July 22, 2023, Defendant falsely declared in the ESCALATOR CAST Facebook group chat, with over 26 participants across the country, that Bloom was trying to "steal" his first writer position; and Defendant messaged ten times from 10pm to 11pm EST, looking for people in the chat to affirm that he was the "first writer" of the project.

75)     On or about July 24, 2023, in the ESCALATOR CAST chat, Defendant falsely accused Bloom of trying to "steal" the project, messaging 15 times between 11:20PM EST and 12AM EST.

76) Many cast members in the group chat, including the Director and two of the lead actors, left the ESCALATOR project shortly thereafter.

77) On or about July 27, 2023, Defendant attended a Zoom meeting with a potential investor while intoxicated.

78) On or about July 27, 2023, Defendant claimed that he had another attorney register copyright on the ESCALATOR Scripts, SERENE, LAST DOOR, and OPEN HOUSE, with Bloom omitted as an author on all filings, thereby repudiating all the writers' agreements.

79) On or about July 27, 2023, Bloom became aware of at least some of Defendant's misrepresentations.

80) On or about July 28, 2023, Bloom learned that Gilligan and Das were both true authors of ESCALATOR Short.

81) On or about July 31, 2023, Defendant failed to attend a meeting with a potential investor, without notice.

82) On or about August 2, 2023, Defendant failed to attend a meeting with a different potential investor, without notice.

83) On or about August 8, 2023, Bloom filed a complete application for copyright registration of LAST DOOR, which later registered with Reg. # PAu004191778.

84) Bloom paid $65 to file the registration on behalf of Bloom, Defendant, and Willi, which was approved by all three.

85) Willi reimbursed Bloom $21.66 for her share, but Defendant failed to do so.

86) On or about August 14, 2023, Bloom informed Defendant that he would cease working with him unless and until Defendant ratified the Contingent Contract with Promoter and Investor.

87)     On or about September 2, 2023, Defendant alleged, via text message, that Bloom forged his signature on the Contingent Contract and all the contracts Defendant had DocuSigned on July 11, 2023.

88)     On or about September 22, 2023, Defendant alleged, via text message, that Bloom forged his signature on the Contingent Contract and all the contracts Defendant had DocuSigned on July 11, 2023.

89)     On or about September 25, 2023, Defendant admitted to there being two undisclosed co-writers on ESCALATOR Feature: Christopher Rennie and Carrie Fishbane.

90)     On or about September 28, 2023, Defendant was intoxicated and became belligerent on a business call with Bloom and a potential director for SERENE, causing the potential director to not want to work with Defendant.

91)     The potential director sent an email to Bloom after the meeting, writing "Hey Gary sorry that had to happen. This happened before and he said he stopped drinking and I think was going to therapy."

92)     On or about October 4, 2023, Bloom acquired the copyright of Gilligan and Das in ESCALATOR Short via assignment agreement.

93)     On or about October 10, 2023, Bloom acquired the copyright of Rennie and Fishbane in ESCALATOR Feature via assignment agreement.

94)     The working relationship between Bloom and Defendant deteriorated until ending the relationship became necessary.

95)     On or about October 13, 2023, Defendant told Bloom, "I didn't sign your contracts. I didn't trust you."

96)     On or about October 22, 2023, Defendant asked Bloom if he could meet with Defendant and Animator to discuss a mutual parting of ways.

97)     For over two weeks, Animator mediated with Bloom and Defendant to come to fair settlement terms, but unbeknown to Animator, Defendant was not acting in good faith.

98)     On or about November 6, 2023, Defendant requested from Bloom via text a "legal bill" for legal services rendered, in response to which Bloom provided an invoice with full itemization for 906.5 documented hours.

99)     Bloom is an entertainment attorney and a registered patent attorney with over eleven years of legal experience.

100)    Bloom billed at the reasonable rate of $300 per hour, for a total invoiced amount of $271,950.00.

101)    On or about November 9, 2023, as MONEY TREE reached the second stage of funding, and was thereby getting close to production, Defendant hired an outside attorney to terminate the legal representation by Bloom.

102)    On or about November 9, 2023, Defendant's new attorney sent Bloom a termination letter with no mention of compensation, alleging conflicts of interest with an implied threat of ethics violations and an ethics complaint.

103)    Bloom alleges that Defendant had no intention of compensating Bloom for services rendered in good faith.

104)    On or about November 10, 2023, Bloom retained counsel to respond to Defendant's termination letter.

105)    Subsequent attempts by Bloom to pursue compensation and settlement from Defendant were met with further misrepresentations and resistance.

106)     On or about January 12, 2024, Bloom learned that Lien is not a true author of SERENE; her script version has little influence on, and no written expression in, SERENE.

107)     On or about January 26, 2024, Bloom filed a complete application for copyright registration of ESCALATOR Short in USCO Case # 1-13380912578, which later registered with Reg. # PA0002454810 and lists Bloom, Das, Gilligan, and Campbell as authors, and Bloom and Campbell as claimants.

108)     On or about January 26, 2024, Bloom filed a complete application for copyright registration of ESCALATOR Feature, which later registered with Reg. # PAu004211360 and lists Bloom, Rennie, and Fishbane as authors and Bloom as sole claimant.

109)     On or about January 29, 2024, Bloom acquired the copyright of McRae (aka "DuVerger") in SERENE via assignment agreement.

110)     On or about January 31, 2024, Bloom acquired the copyright of Willi in SERENE via assignment agreement and then filed a complete application for copyright registration of SERENE in USCO Case # 1-13382383213, which later registered with Reg. # PAu004213773 and lists McRae, Willi, and Bloom as authors and Bloom as sole claimaint.

111)     Defendant plagiarized the copyrighted work of Gilligan and Das, and without permission, represented it as his own in ESCALATOR Short.

112)     Defendant reproduced and distributed unauthorized copies of their work in ESCALATOR Short via email, including but not limited to, on Nov. 25, 2022 to 1 recipient, on Dec. 11, 2022 to 2 recipients, on Jan. 31, 2023 to 7 recipients, on March 4, 2023 to 3 recipients, on March 5, 2023 to 1 recipient, on March 20, 2023 to 2 recipients, and on April 23, 2023 to 5 recipients.

113)    Defendant plagiarized the copyrighted work of Rennie and Fishbane, and without permission, represented it as his own in the ESCALATOR Feature.

114)    Defendant reproduced and distributed unauthorized copies of their work in ESCALATOR Feature via email, including but not limited to: on Nov. 25, 2022 to 1 recipient, on Dec. 11, 2022 to 2 recipients, on Jan. 31, 2023 to 7 recipients, on March 4, 2023 to 3 recipients, on March 5, 2023 to 1 recipient, on March 13, 2023 to 1 recipient, and on April 19, 2023 to 11 recipients.

115)    Defendant plagiarized the copyrighted work of McRae (aka "DuVerger"), and without permission, represented it as his own in SERENE.

116)    Defendant reproduced and distributed unauthorized copies of her work in SERENE via email, including but not limited to, on April 15, 2023 to 10 recipients, on April 18, 2023 to 5 recipients, on April 25, 2023 to 4 recipients, on May 3, 2023 to 5 recipients, and on May 16, 2023 to 4 recipients.

## CLAIMS

### COUNT I
### Legal Services Agreements - Fraud in the Inducement

117)    Bloom incorporates by reference and realleges all the above paragraphs.

118)    Defendant misrepresented himself as: (a) the sole author of ESCALATOR Short, ESCALATOR Feature, and OBSTACLE; (b) an equally-contributing writer of the two writers on SERENE, LAST DOOR, OPEN HOUSE, and MONEY TREE; and (c) the sole creative behind WILBUR.

119)    Defendant submitted the plagiarized work of Gilligan, Das, Rennie, Fishbane, and McRae to Bloom for review, misrepresenting it as his own, to induce Bloom into representing him as a screenwriter and creative.

120)    Almost all of the written work submitted by Defendant for Bloom's review was the plagiarized work of other people.

121)    Bloom agreed to legally represent Defendant as a screenwriter and creative based on Defendant's misrepresentations and the quality of the plagiarized work provided for his review.

122)    Bloom signed the legal services agreements of April 2, 2023 and July 11, 2023 with Defendant based solely on the belief that Defendant's misrepresentations were true, that he had authored the works he falsely claimed to author, and that he was a professional writer.

123)    At the time of contract, other than the allegedly incorrect title page of ESCALATOR Short, Bloom had no reason to doubt Defendant's claims or authorship.

124)    Bloom later learned that Defendant is a plagiarist and a confidence man, not a professional writer.

125)    Bloom was deceived into signing contracts and, thereunder, providing at least 906.5 documented hours helping Defendant market the plagiarized work of others, and Bloom spent at least another 300 undocumented hours working with Defendant.

126)    If Bloom had known the truth about Defendant's plagiarism, misrepresentations, and work ethic, he would never have contracted with him.

127)    Bloom alleges that the legal services agreements are void or voidable, *ab initio*, due to Defendant's intentional misrepresentations and fraudulent acts.

<u>COUNT II</u>
<u>Legal Services Agreements – Breach of Contract</u>

128)    Bloom incorporates by reference and realleges all the above paragraphs.

129)    Bloom alleges that the legal services agreements are both void, *ab initio*, or at least unenforceable, due to Defendant's fraudulent inducement; however, in case the Court finds that the agreements are enforceable, Bloom argues the following count.

130)    Bloom provided at least 906.5 hours of service helping Defendant monetize the PROJECTS, including but not limited to drafting and distributing nondisclosure agreements, drafting and distributing writers' collaboration agreements, preparing and making filings with the United States Copyright Office ("USCO"), investigating the true authorship of the PROJECTS to clear them for pre-production copyright registration, and conferring with Defendant and others.

131)    Defendant materially breached the Contingent Contract by intentionally misrepresenting the true authorship of the ESCALATOR Scripts and SERENE.

132)    Bloom has a good-faith belief that Defendant intentionally misrepresented the true authorship of OBSTACLE and the true creatorship behind WILBUR in the Contingent Contract.

133)    Bloom has a good-faith belief that Defendant did not write, and has never read, the full 163-page OBSTACLE script from 2017.

134)    Due to Defendant's intentional misrepresentations, Bloom invested at least 50 unexpected hours investigating the authorship of some of the PROJECTS and speaking with undisclosed co-writers and other writers, producers, directors, and actors from Defendant's past.

135)    Through his investigation, Bloom learned that Defendant is a plagiarist and a confidence man, not a professional writer.

136)    Defendant repudiated the Contingent Contract (and all other agreements signed on July 11, 2023) on multiple dates between July 11, 2023 and Nov. 9, 2023 (including but not

limited to July 22, 2023, Sept. 2, 2023, Sept. 22, 2023, and Oct. 13, 2023), falsely claiming that Bloom had forged his signature and stating that Defendant would not honor any of the contracts.

137)    Defendant repudiated the Contingent Contract on multiple occasions between July 11, 2023 and Nov. 9, 2023, stating that Bloom should not get compensated for MONEY TREE, because he "didn't do anything on it" and "didn't bring investors."

138)    Between April 2, 2023 and Nov. 9, 2023, Defendant did not produce a single marketable piece of work product related to the PROJECTS, such as a script revision, a pitch deck modification, or a simple 500-word synopsis.

139)    On or about July 22, 2023, Defendant's unprofessional conduct and personal issues sabotaged all the progress that had been made towards producing ESCALATOR Short and getting funding for ESCALATOR Feature.

140)    Bloom expected to work alongside Defendant to develop the PROJECTS for profit.

141)    Defendant missed meetings and attended meetings while intoxicated.

142)    Bloom has a good-faith belief that Defendant never intended to perform any work on any of the projects beyond communicating via phone calls and electronic messages.

143)    On or about November 9, 2023, Defendant acted to terminate the agreements, after Bloom had performed but Defendant had not yet performed, without compensating Bloom.

<u>COUNT III</u>
<u>Legal Services Agreements – Quantum Meruit</u>

144)    Bloom incorporates by reference and realleges all the above paragraphs.

145)    Bloom alleges that Defendant rendered the legal services agreements void, or at least unenforceable, *ab initio*, due to fraudulent misrepresentations or material breaches or both.

146)    Bloom alleges that, if the legal services agreements are not void or unenforceable *ab initio* due to fraud or breach, Defendant repudiated the legal service agreements on multiple occasions between July 11, 2023 and Nov. 9, 2023.

147)    Between Feb. 2, 2023 and Nov. 9, 2023, Bloom provided at least 1,200 hours of legal services to Defendant.

148)    Bloom provided Defendant with a detailed invoice for 906.5 documented hours and should be compensated for at least 1,200 hours at a reasonable hourly rate of at least $300.

COUNT IV
Legal Services Agreements – Unjust Enrichment

149)    Bloom incorporates by reference and realleges all the above paragraphs.

150)    Between Feb. 2, 2023 and Nov. 9, 2023, Bloom provided at least 1200 hours of legal services to Defendant, with 906.5 hours documented in a detailed invoice.

151)    Defendant and Bloom conferred regularly throughout that time to keep Defendant informed of Bloom's progress on pertinent matters.

152)    Bloom performed the promised services, Defendant accepted the services knowing that his performance would be due later, and then Defendant terminated the legal services agreement as Defendant's obligation to perform approached.

153)    Defendant willingly accepted all Bloom's promised service without giving his promised service in return.

COUNT V
Writers' Agreements – Fraud in the Inducement

154)    Bloom incorporates by reference and realleges all the above paragraphs.

155)     Defendant misrepresented himself as: (a) the sole author of ESCALATOR Short and ESCALATOR Feature, and (b) an equally-contributing writer of the two writers of SERENE, LAST DOOR, and OPEN HOUSE.

156)     To deceive Bloom into co-writing with him, Defendant submitted for Bloom's review the plagiarized work of Gilligan, Das, Rennie, Fishbane, and McRae, misrepresenting it as his own.

157)     Almost all work submitted by Defendant for review by Bloom to influence his decision was the plagiarized work of other people.

158)     Defendant misrepresented that he was a hard worker and would produce work product.

159)     Defendant misrepresented that he was authorized to enter a writers' agreement for each of the scripts.

160)     Bloom agreed to co-write with Defendant, based on Defendant's misrepresentations and the quality of the plagiarized work he provided for Bloom's review.

161)     On or about July 11, 2023, Bloom and Defendant signed the Five Writers Agreements for the above five projects.

162)     At the time of contract, other than the allegedly incorrect title page of ESCALATOR Short, Bloom had no reason to doubt Defendant's claims or authorship.

163)     Defendant was later found to have contributed little written expression to ESCALATOR Short and no written expression to ESCALATOR Feature, SERENE, LAST DOOR, or OPEN HOUSE.

164)     Defendant later declined to write a synopsis for OBSTACLE.

165)     Defendant later declined to make any script edits for LAST DOOR.

166)    If Bloom had known the truth of Defendant's writing ability and work ethic, he would not have signed any co-writing agreements.

167)    In reliance on Defendant's misrepresentations, Bloom invested at least 40 hours of writing time into ESCALATOR Short, developing the 13-page short into a 20-page short and improving the pitch deck.

168)    In reliance on Defendant's misrepresentations, Bloom invested at least 30 hours of writing time into ESCALATOR Feature, rewriting sections and fixing typographical and character/storyline errors.

169)    In reliance on Defendant's misrepresentations, Bloom invested at least 60 hours into SERENE, developing the storyline, rewriting the script, and mapping out plot and characters for a second episode.

170)    In reliance on Defendant's misrepresentations, Bloom invested at least 80 hours into LAST DOOR, developing the storyline, rewriting certain portions of the script, and developing the pitch deck to be investor-ready.

171)    In an effort to preserve his investment after Defendant's fraudulent inducement and plagiarism and possible copyright infringement were discovered, Bloom bought the Copyright in (a) ESCALATOR Short from Gilligan and Das for $200, (b) ESCALATOR Feature from Rennie and Fishbane for $2,000, and (c) SERENE from McRae and Willi for $30.

172)    Bloom alleges that the writers' agreements are void or voidable, *ab initio*, due to Defendant's intentional misrepresentations and fraudulent acts.

COUNT VI
Writers' Agreements – Breach of Contract

173)    Bloom incorporates by reference and realleges all the above paragraphs.

174)     Bloom alleges that the writers' agreements are all void, *ab initio*, or unenforceable due to Defendant's fraudulent inducement; however, in case the Court finds that the agreements are enforceable, Bloom argues the following count.

175)     Defendant warranted in the writers' agreements to not introduce any material into the work that would infringe the rights or Copyright of any other person, and to indemnify and hold the others harmless in case of breach.

176)     Defendant intentionally violated the rights and/or Copyright of: (a) Gilligan and Das in ESCALATOR Short, (b) Rennie and Fishbane in ESCALATOR Feature, and (c) McRae (aka "DuVerger") in SERENE.

177)     Defendant did not cure the material breaches.

178)     Bloom alleges that the writers' agreements of ESCALATOR Short, ESCALATOR Feature, and SERENE are unenforceable, *ab initio*, due to Defendant's willful material breach related to plagiarism and possible copyright infringement.

179)     Bloom alleges that the Five Writers Agreements (for ESCALATOR Short, ESCALATOR Feature, SERENE, LAST DOOR, OPEN HOUSE) are voided, or at least unenforceable, due to Defendant repudiating all the signed contracts, including the writers' agreements, on multiple occasions between July 11, 2023 and Nov. 9, 2023.

180)     Bloom alleges that the Five Writers Agreements are voided, or at least unenforceable, due to Defendant's breach on July 27, 2023 by Defendant claiming he hired another attorney to register copyright on the five scripts excluding Bloom as an author, thereby in material violation of the Five Writers Agreements and in direct violation of criminal statute 17 U.S.C. § 506(e), which codifies false representation of a material fact in a copyright registration.

181)    Although Defendant admitted to a crime, the alleged filings never yielded registrations and were probably never filed.

182)    To preserve projects and his time investment after Defendant's material breach, Bloom bought the Copyright in the ESCALATOR Scripts for $2,200 and in SERENE for $30.

183)    Through his own writing, and organizing table reads, Bloom revived the stagnant ESCALATOR Short and ESCALATOR Feature projects.

184)    In July of 2023, Bloom worked diligently with the Director to arrange proof-of-concept footage to help market the ESCALATOR Scripts to investors.

185)    Defendant had first received the writers' agreement for ESCALATOR Short on or before June 23, 2023, with Bloom listed as the first writer.

186)    Defendant had allegedly signed the ESCALATOR Short writers' agreement on or before June 30, 2023, and then again on July 11, 2023.

187)    On or about July 22, 2023 and July 24, 2023, Defendant had unprofessional public outbursts because he was not listed as first writer, and those outbursts did irreparable harm to the ESCALATOR projects, costing the projects to lose cast and crew and months of progress.


<u>COUNT VII</u>
<u>Writers' Agreements – Quantum Meruit</u>

188)    Bloom incorporates by reference and realleges all the above paragraphs.

189)    Bloom alleges that Defendant rendered the writers' agreements void, or at least unenforceable, *ab initio*, due to fraudulent misrepresentations or material breaches or both.

190)    Bloom alleges that, if the writers' agreements are not void or unenforceable due to fraud or breach, Defendant repudiated the agreements on multiple occasions between July 11, 2023 and Nov. 9, 2023.

191)    Between April 2, 2023 and Nov. 9, 2023, Bloom invested at least 40 hours of writing to develop ESCALATOR Short.

192)    Between Sept. 11, 2023 and Nov. 9, 2023, Bloom invested at least 30 hours of writing to develop ESCALATOR Feature.

193)    Between April 2, 2023 and Nov. 9, 2023, Bloom invested at least 60 hours of writing to develop SERENE.

194)    Between April 2, 2023 and Nov. 9, 2023, Bloom invested at least 80 hours of writing to develop LAST DOOR.

195)    Between April 2, 2023 and Nov. 9, 2023, Bloom invested a total of at least 210 hours of writing time to improve the projects under writers' agreements.

COUNT VIII
Writers' Agreements – Unjust Enrichment

196)    Bloom incorporates by reference and realleges all the above paragraphs.

197)    Between Feb. 2, 2023 and Nov. 9, 2023, Bloom provided at least 210 hours of writing services to Defendant's projects, enhancing both screenplays and pitch decks.

198)    Defendant and Bloom conferred regularly throughout that time to keep Defendant informed of Bloom's progress on pertinent matters.

199)    Bloom provided the promised writing services, and Defendant's projects were improved as a result, but Defendant did not perform any of the promised services in return.

200)    Bloom has a good-faith belief that Defendant expected Bloom to do all the work and/or writing to improve Defendant's projects while Defendant did no work and/or writing himself.

<u>COUNT IX</u>
<u>Declaration of Copyright Ownership</u>

201)    Bloom incorporates by reference and realleges all the above paragraphs.

202)    Bloom alleges that the Five Writers Agreements are void, or at least unenforceable, *ab initio*, due to Defendant's fraud or breach or both.

203)    Bloom alleges that he owns the majority of the ESCALATOR Short.

204)    According to Das, Defendant's written contribution to the project was via email notes which Das pasted into the script.

205)    After discussions with Gilligan and Das, and assuming Bloom honors the 50/50 split of the breached writers' agreement between Bloom and Defendant, Bloom estimates that he holds at least a 94.6% ownership interest in the ESCALATOR Short.

206)    Bloom alleges that Defendant's contribution to the ESCALATOR Short is minimal and possibly unenforceable.

207)    Defendant made no direct contribution of written expression to the ESCALATOR Feature, which was written from scratch by Rennie and Fishbane, although Rennie does confess to using "a line here or a gag there" from the ESCALATOR Short.

208)    Bloom identified the lines and gags used from the ESCALATOR Short in the ESCALATOR Feature and confirmed that they had been substantially rewritten.

209)    Defendant made no contribution of written expression to the SERENE script, which was written by Willi based on some verbal creative input from Defendant and the script of McRae (aka "DuVerger").

210)    Upon investigation, Bloom learned that Lien is not a true author of SERENE.

211)    Defendant made no contribution of written expression to LAST DOOR, which was written by Willi based on some verbal creative input from Defendant.

212)    Bloom alleges that Defendant's contribution of written expression, if any, to the ESCALATOR Feature, SERENE, and LAST DOOR is de minimis.

213)    Bloom alleges that, without a valid writers' agreement, Defendant's interest, if any, in the ESCALATOR Feature, SERENE, and LAST DOOR is de minimis.

## COUNT X
## Accounting

214)    Bloom incorporates by reference and realleges all the above paragraphs.

215)    Bloom has an ownership interest as a writer in ESCALATOR Short, ESCALATOR Feature, SERENE, LAST DOOR, and OPEN HOUSE, by breached writers' agreements and by contribution of written expression.

216)    Bloom has a financial interest in the above five projects, as well as in MONEY TREE, WILBUR, OBSTACLE, and "Cat-Astrophe," by fraudulently-induced, breached legal services agreements and by work product.

217)    Defendant has not provided Bloom with any revenue or other financial information regarding the status of the PROJECTS since October of 2023, and the facts necessary to determine any amounts due to Bloom are solely known by Defendant.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff claims damages and prays that judgment be entered in Plaintiff's favor against Defendant, and that Plaintiff be granted the following relief:

A)    Judgment in favor of Bloom and against Defendant on all Counts;

B)    A Determination that Defendant fraudulently induced Bloom into the legal services contracts and the writers' agreements;

C)    A Determination that Defendant defrauded Bloom into providing services to him;

D)    An Award of at least $271,950 in damages for 906.5 documented hours of legal services rendered;

E)    An Award of damages in whatever amount the Court deems just for an additional 300 hours of undocumented legal services;

F)    An Award of damages in any amount the Court deems just for 210 hours of writing services rendered;

G)    An Order enjoining Defendant from distributing, shopping, or disposing of any of Defendant's PROJECTS, in which Bloom has a financial or ownership interest, without Bloom's express written consent;

H)    An Order compelling Defendant to disclose, under the penalty of perjury, all co-writers and creatives behind any of the PROJECTS in which Bloom has a financial or ownership interest;

I)    An Accounting of all PROJECTS, additionally including details on production and funding status, any open or recent offers, and any pending transactions or pitches;

J)    An Order enjoining Defendant from posting, directly or through another person, any comments on social media about Bloom or any of his projects;

K)    An Award of at least $2,200 as reimbursement for the purchase of the copyright of the undisclosed ESCALATOR Feature and ESCALATOR Short co-writers;

L)    An Award of $21.66 as reimbursement for Defendant's share of the LAST DOOR copyright registration filing;

M)      A Declaration of the percentage of Defendant's ownership interest in the ESCALATOR Short of no more than 5.4%;

N)      Assignment of Defendant's copyright, if any, in the ESCALATOR Short;

O)      A Declaration that Defendant's copyrightable contribution, if any, to each of the ESCALATOR  Feature, SERENE, and LAST DOOR is de minimis and not protectable;

P)      Assignment of Defendant's copyright, if any, in the ESCALATOR Feature, SERENE, and LAST DOOR, and all related contracts;

Q)      Assignment of Defendant's copyright in MONEY TREE (Reg. # PAu 4-062-783) and all related contracts;

R)      Assignment of Defendant's copyright in the other remaining PROJECTS on which Bloom worked, including WILBUR, OPEN HOUSE, OBSTACLE, and "Cat-Astrophe;"

S)      An Order requiring Defendant to secure gainful employment in order to make payments towards any money damages awarded by the Court;

T)      An Order for wage garnishment of 50%, or of whatever percentage the Court deems just, for payment towards money damages awarded by the Court;

U)      An Order attaching future projects and/or earnings of the Defendant until any money damages awarded by the Court have been paid in full;

V)      An Award of costs and attorney's fees, as permitted by the Contingent Contract;

W)      An Award of punitive damages, as not precluded by the writers' agreements; and

X)      Such further relief as the Court deems just.

## **CERTIFICATION**

Dated:March 1, 2024                    Respectfully submitted,

*GMBloom*
_____
GARY M. Bloom
Pro Se Litigant
30 Franklin St, Unit 223
Malden MA 02148-4139
617-553-4255
GaryBloomLaw@gmail.com

### **CERTIFICATE OF SERVICE**

I, Gary M. Bloom, Pro Se Litigant, certify that on this 1st day of March, 2024, I have served the Defendant with a copy of the foregoing by sending electronically, via email, to WilliamJamesCampbell3rd@gmail.com.

*GMBloom*
_____
Gary M. Bloom
Pro Se Litigant